COMMONWEALTH *vs.* JEREMY M. AMARAL.

No. 09-P-2284.

Plymouth. November 4, 2010. - January 26, 2011.

Present: DUFFLY, KANTROWITZ, & MILKEY, JJ.

*Solicitation to Commit Felony. Prostitution. Evidence,* Business record, Authentication, Best and secondary.

At the trial of a criminal complaint charging, inter alia, solicitation of a prostitute, the documentary evidence was sufficient to tie the defendant to an undercover police officer posing as a fifteen year old prostitute, where a document from an Internet service provider, linking the defendant to a specific account, was admissible as a business record [673-674]; and where, with respect to a series of electronic mail communications, the actions of the defendant himself (i.e., arriving at a place and time specified in one communication, answering a telephone number provided in another communication, and resembling the person in a photograph enclosed in yet another communication) served to authenticate the communications [674-675], and there was no merit to the claim that the best evidence rule did not permit admission of the communications [675-676].

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on September 18, 2007.

The case was tried before *Julie J. Bernard,* J.

*Thomas D. Frothingham* for the defendant.

*Christine M. Kiggen,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. In this case, we examine the efforts of the law to keep abreast of technological advances. More specifically, the issue is whether the Commonwealth's documentary evidence was sufficient to tie the defendant to an undercover officer posing as a fifteen year old prostitute. The primary documentary evidence against the defendant consisted of (1) a printed copy of an electronic document provided by Yahoo! Inc. (Yahoo), an Internet service provider, linking him to a Yahoo account; and

(2) electronic mail (e-mail) correspondence allegedly between him and the officer. Fatal to the defendant were the actions he took in conformity with the information contained in those e-mails.

The defendant, Jeremy M. Amaral, was convicted of (1) attempted rape of a child, G. L. c. 274, § 6, and G. L. c. 265, § 23; and (2) solicitation of a prostitute, G. L. c. 272, § 8.[1] The defendant appeals, arguing that the above evidence was wrongfully admitted.[2] We affirm.

*Facts.* During the summer of 2007, State police Trooper Peter A. Cooke[3] began an undercover operation pretending to be a fifteen year old prostitute on Craigslist, an online bulletin board. Trooper Cooke used the screen name "ashley01_10_1992@yahoo.com" (Ashley) and posted a message — "young teen looking for a friend . . . email me if u wanna talk" — in the "erotic services" section of Craigslist.

On August 30, 2007, rdwmercury2006@yahoo.com (Jeremy) contacted Ashley and stated, "My name is Jeremy, I'm 27 5'7" 152 lbs. . . . [W]anna meet up?" The two thereafter engaged in numerous brief e-mail communications, amounting to thirty-seven pages of text. In one, Ashley told Jeremy, "I am a 15 year old female," to which Jeremy responded, "Hey, I'm ok with it, but can I ask you why you wouldn't mind being friends with a 27 year old?" Over the course of the communications, Ashley held herself out as a fifteen year old prostitute, and Jeremy sent a picture of himself.

On the morning of September 17, 2007, Jeremy sent an e-mail stating that he was interested in meeting with Ashley later that day and sent her his telephone number. In anticipation of the meeting, Trooper Cooke engaged the assistance of a female

---

[1]The defendant was found not guilty of a third charge, enticing a child under the age of sixteen to engage in prostitution, G. L. c. 265, § 26C(*b*).

[2]The defendant also claims error in the jury instructions. Read in their entirety, see *Commonwealth* v. *Glacken*, 451 Mass. 163, 168-169 (2008), the instructions adequately conveyed to the jury the need to find that the fictitious female was under the age of sixteen. Additionally, her age was never an issue at trial. See *Commonwealth* v. *Gagnon*, 430 Mass. 348, 350 (1999).

[3]Trooper Cooke has conducted over 100 undercover investigations wherein he posed as a thirteen, fourteen, or fifteen year old girl to apprehend adults who approach and solicit underage children online.

trooper, Anna Brookes, to pretend to be Ashley and call the telephone number Jeremy had provided to arrange a meeting at a local strip mall, near a convenience store, at 5:00 P.M. Trooper Brookes called the telephone number and addressed the other party as Jeremy, who stated that he wanted oral sex for fifty dollars. The arrangements were made.

Prior to the meeting, Trooper Cooke learned that the telephone number he received from Jeremy was registered to a Jeremy Amaral. He also checked the records of the Registry of Motor Vehicles, which provided photographs of five or six individuals with the name Jeremy Amaral. Trooper Cooke compared the photograph sent from Jeremy to those received from the Registry: "at that point I . . . still wasn't 100 percent that I . . . kn[e]w exactly who, but I had narrowed it down to a possible two."

At approximately 5:00 P.M. on September 17, 2007, after setting up surveillance, Trooper Cooke observed the defendant arrive in a car and park where Ashley had earlier directed him. The defendant then exited his car and walked in front of the stores in the strip mall, going into a few establishments. Trooper Cooke then asked Trooper Brookes to again call the defendant. When she did, Trooper Cooke observed the defendant answer his telephone. At that point, the defendant was arrested.

*Discussion.* 1. *Exhibit A.* At trial, to demonstrate that rdwmercury2006@yahoo.com was the defendant, the Commonwealth introduced, among other exhibits, exhibit A, which was a one-page document provided by Yahoo, labeled an account management tool, that indicated that the login name of rdwmercury2006 was registered to "Mr. Jeremy Amaral." An affidavit from the custodian of records for Yahoo, John P. Hernandez, accompanied the document.[4] The defendant claims that the document is not a business record insofar as Yahoo "has no interest in the truth of the information it stores but simply records whatever the user enters."

---

[4]The affidavit, among other things, stated that "Yahoo! servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice. Yahoo! provides most of its services to its subscribers free of charge. As such, Yahoo! does not collect billing information or verified personal information from the majority of our users."

Little need be said about business records other than that they are a well known exception to the hearsay rule. See G. L. c. 233, §§ 78, 79J; Mass. G. Evid. § 803(6)(A) (2010). The foundational requirements of § 78 were met here,[5] and the document was properly admitted. Further, "[a] business record is admissible even when its preparer has relied on the statements of others because the personal knowledge of the entrant or maker affects only the weight of the record, not its admissibility." Note to Mass. G. Evid. § 803, at 271. See *Wingate* v. *Emery Air Freight Corp.*, 385 Mass. 402, 406 (1982).

Although exhibit A was properly admitted, the next step is the evaluation of its weight. In this case, standing alone, the weight of exhibit A was relatively weak. "Mere identity of name is not sufficient to indicate an identity of person." *Commonwealth* v. *Koney*, 421 Mass. 295, 302 (1995). However, it gained strength when considered in conjunction with the other evidence.

2. *Exhibit G.* Exhibit G consisted of the thirty-seven pages of e-mail communications between Jeremy and Ashley printed from Trooper Cooke's computer, in chronological order, starting from August 30, 2007. The defendant argues that they were not properly authenticated and did not conform to the best evidence rule.

a. *Authentication.* "An item offered in evidence must be what its proponent represents it to be. Authenticity is usually proved by testimony of a witness either (1) that the thing is what its proponent represents it to be, or (2) that circumstances exist which imply that the thing is what its proponent represents it to be." *Commonwealth* v. *Williams*, 456 Mass. 857, 868 (2010) (quotations and citations omitted). See Mass. G. Evid. § 901(a).

The actions of the defendant himself served to authenticate the e-mails. One e-mail indicated that Jeremy would be at a certain place at a certain time, and the defendant appeared at that place and time. In other e-mails, Jeremy provided his

[5]The requirements for a business record are that (i) it was made in good faith, (ii) "it was made in the regular course of business," (iii) it was made before the criminal proceeding in which it was offered, and (iv) "it was the regular course of such business to make such . . . record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter." Mass. G. Evid. § 803(6)(A).

telephone number and photograph. When the trooper called that number, the defendant immediately answered his telephone, and the photograph was a picture of the defendant. These actions served to confirm that the author of the e-mails and the defendant were one and the same. See Mass. G. Evid. § 901(b)(6).[6]

*Commonwealth* v. *Williams, supra,* involving a MySpace social networking Web site account, is not to the contrary. "Analogizing a MySpace Web page to a telephone call, a witness's testimony that he or she has received an incoming call from a person claiming to be 'A,' *without more,* is insufficient evidence to admit the call as a conversation with 'A' " (emphasis added). *Id.* at 869. Here, as explained above, there was more.

b. *Best evidence.* The best evidence rule provides that "[t]o prove the content of a writing or recording, but not a photograph, the original writing or recording is required, except as otherwise provided in these sections, or by common law or statute." Mass. G. Evid. § 1002.

To the extent that a best evidence objection was even made below, we find the argument unavailing. First, it appears, as before, that the defendant is primarily questioning the authenticity of the e-mails. Second, it is questionable whether the best evidence rule is even applicable here. Trooper Cooke printed copies of communications he received. That somehow the best evidence is found in the Yahoo servers is doubtful, as is the need to bring in the computer drive itself.[7] Third, "[t]he significance of the best evidence rule has declined appreciably in recent decades. The rule predates the invention of photocopy machines and computers, and also the modern discovery rules." Brodin & Avery, Massachusetts Evidence § 10.2, at 603 (8th ed. 2007). Fourth, G. L. c. 233, § 79K, inserted by St. 1994, c. 168, § 1, permits the admission of a duplicate "computer

---

[6]Section 901 of Mass. G. Evid. provides as follows: "(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this section: . . . (6) Telephone conversations. A telephone conversation, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if, (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called . . . ."

[7]It is possible that in some instances there might be such a need.

data file or program file." See *Commonwealth* v. *Weichell*, 390 Mass. 62, 77 (1983) ("best evidence rule does not apply to photographs"); *Commonwealth* v. *Leneski*, 66 Mass. App. Ct. 291, 294 (2006) (best evidence rule inapplicable to "digital images placed and stored in a computer hard drive and transferred to a compact disc").

*Conclusion.* It appears patently clear that in the computer age, one may set up a totally fictitious e-mail account, falsely using the names and photographs of others. One could have set up an account improperly using the name and photograph of the defendant. Here, the Commonwealth painstakingly presented its case, introducing a number of documentary exhibits, many of which used the name of the defendant. It was not, however, in this case at least, until the defendant appeared as planned in the e-mail communications, expecting to meet and have sex with a fifteen year old prostitute, that his guilt was established.[8]

*Judgments affirmed.*

---

[8]We do not intimate that a meeting is necessary in every such case. Each case rises and falls on its own unique set of facts.