NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-925

COMMONWEALTH

vs.

MARCOS GOMEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Marcos Gomez, appeals from his convictions of assault and battery on a family or household member, G. L. c. 265, § 13M (a); three counts of violating an abuse prevention order, G. L. c. 209A, § 7; and witness intimidation, G. L. c. 268, § 13B.[1]  Concluding that the WhatsApp[2] text messages and voicemails were properly authenticated and there was sufficient evidence that the defendant intimidated the victim, we affirm.

1.  Authentication of WhatsApp text messages and voicemails.  "In the case of a digital communication that is

_____

[1] The jury acquitted the defendant of kidnapping, G. L. c. 265, § 26; and rape, G. L. c. 265, § 22 (b).

[2] WhatsApp is a communication platform that allows users to send text messages, voice messages, images, videos, and files and to make voice and video calls.  See WhatsApp Inc. v. NSO Group Techs. Ltd., 17 F.4th 930, 933 (9th Cir. 2021), cert. denied, 143 S. Ct. 562 (2023).

relevant only if authored by the defendant, a judge is required to determine whether there is sufficient evidence to persuade a reasonable trier of fact that it is more likely than not that the defendant was the author of the communication." Commonwealth v. Meola, 95 Mass. App. Ct. 303, 308 (2019). "Evidence that the defendant's name is written as the author of an [electronic communication] that bears the defendant's name is not sufficient alone to authenticate the electronic communication as having been authored or sent by the defendant." Commonwealth v. Purdy, 459 Mass. 442, 450 (2011). "There must be some 'confirming circumstances' sufficient for a reasonable jury to find by a preponderance of the evidence that the defendant authored the [electronic communications]." Id., quoting Commonwealth v. Hartford, 346 Mass. 482, 488 (1963). "We review a judge's preliminary determination of conditional relevancy under Mass. G. Evid. § 104(b) under an abuse of discretion standard." Meola, supra at 309.

Here, the text and voice messages contain details that adequately identify the defendant as their author. The victim testified that, at the bar before the crimes, the defendant walked over to her and said, "why don't you look at your phone and read your messages?" One of the text messages from the defendant is from this time and says, "You are well entertained ma!!" The victim testified that, while she and the defendant

2

were in the parking lot outside of the bar, the defendant accused her of scratching his face. In a voice message the next day, the defendant said that the victim had "sow[ed her] nails on [his] face." The victim testified that, on November 12, the defendant told the victim that, "if [she was] going to go do the laundry, then wait -- wait for [him] and [they would] go together." The text messages from the defendant that day include, "Did you go to wash?" and, "If you have not gone wait for me." Additionally, there are ten text or voice messages in which the defendant appeared to reference or apologize for the crimes that the victim described happening on November 11 and 12. In short, the content of the voice and text messages contain adequate confirming circumstances to establish that it was "more likely than not that the defendant was the author of the communication[s]." Meola, 95 Mass. App. Ct. at 308. See Commonwealth v. Amaral, 78 Mass. App. Ct. 671, 674-675 (2011) (defendant's actions "served to authenticate the e-mails" where he "provided his telephone number and photograph" and "indicated that [he] would be at a certain place at a certain time and . . . appeared at that place and time").

2. Sufficiency of the evidence of witness intimidation. "When reviewing the denial of a motion for a required finding of not guilty, 'we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether

3

a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Commonwealth v. Quinones, 95 Mass. App. Ct. 156, 162 (2019), quoting Commonwealth v. Faherty, 93 Mass. App. Ct. 129, 133 (2018). "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'"  Commonwealth v. Chin, 97 Mass. App. Ct. 188, 195 (2020), quoting Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016).

A conviction of witness intimidation requires a showing that the defendant "threatened, intimidated, or harassed" the victim.  Commonwealth v. Gardner, 102 Mass. App. Ct. 299, 304 (2023).[3]  Conduct is intimidating if the "acts or words . . . would instill fear in a reasonable person."  Commonwealth v. Rivera, 76 Mass. App. Ct. 530, 535 (2010).  It is not "necessary to establish that the intimidation was successful in the sense that the target of the intimidating conduct was actually frightened and made reluctant to testify."  Id.

Here, all of the defendant's communications to the victim must be considered in light of the fact that they occurred soon after the defendant scratched the victim's face, bit off her

---

[3] The defendant does not challenge the sufficiency of the evidence supporting the other elements of witness intimidation. See Gardner, 102 Mass. App. Ct. at 304.

4

acrylic nails "to teach [her] a lesson," told her, "we're going to die, both of us today," injured her hand with her ring, and then raped her twice.[4]  The day of the second rape, the defendant inundated the victim with voice messages, text messages, and calls.[5]  In the midst of these communications, the victim texted the defendant, "I don't want to talk" and, "Leave me alone."  Shortly thereafter, he sent a voice message saying, "Where are you little one?  I passed by your house and You are not there."  That night, the defendant sent the victim several messages discouraging her from contacting the police.

After the defendant was arrested, he attempted to call the victim from jail twice.  For the first call, the defendant called a third person who added the victim to the call, and the victim hung up immediately.  During the second call, the defendant asked the victim to forgive him, told her that he "trust[ed] God that soon [he would] leave [jail]," and asked her

_____

[4] Although the jury acquitted the defendant of kidnapping and raping the victim, "[a] jury may acquit the defendant on one charge and find the defendant guilty on a different charge, even if certain evidence goes to both charges."  Commonwealth v. Howe, 103 Mass. App. Ct. 354, 357 n.3 (2023).  The trial judge, in ruling on the defendant's motion for a required finding of not guilty, did not need to (and could not) consider the later jury verdicts.

[5] The defendant sent the victim fourteen voice messages, twenty-four text messages, and one photo, and tried to call her four times, including twenty-one communications after the victim texted him, "I don't want to talk" and, "Leave me alone."

to help him.  She told him that she "[couldn't] help [him] anymore" because she had already given her statement to law enforcement, and the defendant replied, "You can do more.  You can be of great help.  And I will thank you for all my life and my children will thank you.  I really give thanks for what has happened."

Finally, the defendant mailed the victim a letter.  In the letter, the defendant expressed surprise that the victim had accused him of rape and claimed that, after he was charged with rape, other prisoners had "lynched" him, breaking his arm, head, and ribs.  He asked the victim to forgive him, then wrote,

> "I want to beg you, ma!!  please don't make my crime more serious, for the love that united us one day please soften your heart and do not accuse me anymore, I promise that I will not bother you again, I will let you make your life as you want but give me the opportunity to have a life outside these bars, I want to serve God.  I already received my punishment love please let me out of here."

The defendant went on to claim that "every 2 days they give [him] a bread with ham and a glass of water," suggested that he might die soon, then told the victim to "just leave [him] alone in the courts so that they dismiss the case . . . be it the last thing [the victim does] for [him]."

In light of the defendant's escalating verbal and physical abuse during their dating relationship, the jury could find that these communications to the victim were intimidating, implicitly suggesting that he blamed her for the serious violence he had

6

suffered.  See Gardner, 102 Mass. App. Ct. at 305 (defendant's "repeated references to the victim as both the reason for his incarceration and prosecution and the only potential key to his freedom" intimidating "in the context of the defendant's long-standing pattern of controlling and abusive conduct toward the victim").  Where the defendant had already responded to being scratched with such extreme violence, these communications suggested even greater danger to the victim if she did not follow the defendant's instructions to drop the charges.  See Commonwealth v. Pagels, 69 Mass. App. Ct. 607, 613 (2007), quoting Commonwealth v. Sholley, 432 Mass. 721, 725 (2000), cert. denied, 532 U.S. 980 (2001) ("jury may consider the context in which the allegedly threatening statement was made and all of the surrounding circumstances").

Judgments affirmed.

By the Court (Green, C.J., Henry & Ditkoff, JJ.[6]),

Paul Petittez

Assistant Clerk

Entered:  May 8, 2024.

---

[6] The panelists are listed in order of seniority.