NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-693

COMMONWEALTH

vs.

JUSTIN ARRIGO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant, Justin Arrigo, was convicted of larceny from a building. He argues that he is entitled to a new trial because (1) trial counsel provided him with ineffective assistance and (2) the judge permitted the Commonwealth to introduce improperly authenticated photographs in evidence. We affirm.

Background. The victim and his siblings owned an automotive sales and autobody business in Lynn. Approximately nine people work at the family-owned business, which has been operating for approximately one hundred and two years. The business is located in a three-story building with the sales counter on the first floor and automotive parts stored on the

second and third floors.  Approximately twelve years prior to May of 2023, the victim packed various items including personal belongings, sports collectibles, other "collectibles," and tools in cardboard boxes and stored them on the second floor.  The boxes were labeled, inventoried, and neatly arranged.  The victim never gave anyone permission to take anything out of the boxes.

At various times in the days leading up to May 8, 2023, the office manager (manager), who had worked at the business for nearly twenty-seven years, noticed certain items[1] on the first-floor counter beside the defendant, who was an employee at the business.  The manager asked the defendant, "several of these times," about the items.  On one occasion, he responded that he "found that on the floor . . . in a pile of tags."  Asked on later occasions about other items, the defendant provided "kind of the same answer."  The defendant worked at the first-floor counter only, but on occasion he "would have to go upstairs to retrieve a part."  The manager noticed, however, that on certain occasions the defendant would go upstairs "to retrieve these parts with a bag," which was something that she had never seen anyone else do in nearly twenty-seven years of working at the business.  In addition, the parts were located among the first

---

[1] The "items" referenced by the manager included "toys" and "figurines."

four racks on the second floor and there would be no reason for the defendant "to go in the back of the building," where the victim's boxes containing the victim's personal items were stored.

On one occasion, the manager saw the defendant with a boxed "Spiderman, Batman, type of" Marvel figurine, and on another occasion saw him with a "Raggedy Ann and Andy type toy." The defendant claimed that he "got [these items] at Walmart." The manager had seen some of these items in the past on the second floor of the building, and subsequently "noticed these things in the defendant's bag in the week leading up to May 8th of 2023."

In addition, "a couple of times," the manager saw the defendant's "Facebook Marketplace"[2] page on the computer screen at the defendant's workstation. On that page she saw, among other items, a label maker that belonged to her and that she had kept on the second floor of the building as well as other items that she recognized as belonging to the victim. The manager, with a coworker who logged into his Facebook Marketplace account, was able to see various listings on the defendant's Facebook Marketplace page, including baseball cards, figurines, and other items that belonged to the victim and had been stored

---

[2] "Facebook Marketplace" is a social media platform "that allow[s] users to do things like sell or purchase goods." Moody v. NetChoice, LLC, 603 U.S. 707, 790 & n.35 (2024) (Alito, J., concurring).

3

among the victim's "boxed things upstairs." Photographs of some of those Facebook Marketplace listings depicting the label maker and items belonging to the victim were admitted in evidence as an exhibit.

On May 8, 2023, the manager confronted the defendant and stated, "[w]e know that you've been stealing a lot of things out of here." The defendant responded that he "didn't know what [she] was talking about, and just kind of chuckled at [her]." The manager also told the defendant that she had called the police, and "then, [the defendant] walked out the door and left."

Through cross-examination and closing argument, the defense at trial focused on the accessibility of others to the area where the stolen items were stored, the absence of direct evidence, and the victim's credibility. Following trial, the defendant, represented by new counsel, filed a motion for new trial alleging ineffective assistance of trial counsel. Following a nonevidentiary hearing, the judge denied the motion in a written decision. The defendant appealed therefrom, and his appeal from the denial of the motion for new trial was consolidated with his direct appeal.

Discussion. 1. Ineffective assistance. The defendant contends that the judge abused his discretion in denying his motion for new trial. Specifically, he argues that trial

4

counsel rendered ineffective assistance by introducing an unredacted "restitution request form" in evidence because the exhibit contained, inter alia, a victim impact statement.  The victim impact statement included the victim's written statement that he had "been violated" by the defendant's actions; the defendant "has no regard for the property of others;" the victim recommended a "maximum sentence;" and the "victim is a habitual stealer."[3]

Pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), a judge may grant a new trial "if it appears that justice may not have been done."  "In reviewing the denial of a motion for new trial, we examine the motion judge's conclusions only to determine whether there has been a significant error of law or other abuses of discretion" (quotation and citation omitted).  Commonwealth v. Ferreira, 481 Mass. 641, 648 (2019).  See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  "Motions for a new trial are granted only in extraordinary circumstances . . . ."  Commonwealth v. Comita, 441 Mass. 86, 93 (2004).  Because the judge who ruled on the motion for new trial was also the trial judge, we extend "special deference" to his denial of the motion.  Commonwealth

---

[3] We assume that the reference to the "victim" in the statement was a mistake and should have referenced the "defendant."

5

v. Robertson, 88 Mass. App. Ct. 52, 59 n.14 (2015), citing Commonwealth v. Grace, 397 Mass. 303, 307 (1986).

Where a motion for new trial is based on ineffective assistance of counsel, the defendant must show that the behavior of counsel fell "below that . . . [of] an ordinary fallible lawyer" and that such failing "likely deprived [him] of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). See Commonwealth v. Millien, 474 Mass. 417, 429-430 (2016). "[A]rguably reasoned tactical or strategic judgments" do not amount to ineffective assistance of counsel unless they are "manifestly unreasonable" when made. Commonwealth v. Rondeau, 378 Mass. 408, 413 (1979), quoting Commonwealth v. Adams, 374 Mass. 722, 728 (1978).

Here, the plaintiff's argument that the introduction of the victim impact statement constituted ineffective assistance of counsel is unavailing. As to the first prong of the ineffective assistance test, the record is clear that defense counsel offered the restitution request form at trial, over the Commonwealth's objection, and represented at that time that he was making a calculated, tactical decision. Defense counsel used the exhibit to impeach the victim's credibility by showing that at least as of June 8, 2023, the victim estimated a high cost of alleged stolen goods yet (1) failed to delineate any

6

stolen item with any specificity, and (2) wrote "compiling complete list," on the form yet failed to provide any such list until the eve of trial. In essence, he used the exhibit to contrast the victim's inaction and inability to specify the loss with his claim that the alleged stolen items were of great value and importance to him.

The defendant now claims that this decision was manifestly unreasonable because of the information in the victim impact statement contained in the exhibit. This argument ignores the deference that must be given to trial counsel. See Commonwealth v. Fisher, 433 Mass. 340, 357 (2001) ("Impeachment of a witness is, by its very nature, fraught with a host of strategic considerations, to which we will . . . still show deference"). Moreover, it ignores defense counsel's statement at trial that the statements on the form "would be natural from the . . . alleged victim, I guess." Finally, it ignores defense counsel's persistence, in the face of the judge's multiple inquiries, to assure the judge that he wanted the victim impact statement in evidence. In other words, as defense counsel recognized at the time, the issue in this case was whether the Commonwealth presented sufficient evidence to prove that this defendant committed this crime. It was obvious that any victim would be upset and want retribution vis-à-vis anyone who allegedly stole

7

myriad items from him.  Indeed, as the judge found in denying the motion for new trial, this tactic

"was not inadvertent.  It was not an oversight.  It was intentional.  The alleged prejudicial portions of the said two-page exhibit were prominent and in plain sight. [Defense counsel] knew exactly what he was doing and did so with a tactical purpose, which was to undermine the credibility of a witness."

While it might have been prudent to seek redaction of the victim impact portion of the document, we cannot say that the judge abused his discretion in concluding that he could not find that defense counsel's "calculated, tactical, purposeful, strategic decision, was manifestly unreasonable."

Even assuming, arguendo, that the defendant has satisfied the first prong of the ineffective assistance test, he has nonetheless failed to satisfy the prejudice prong of the test. We note that the Commonwealth did not reference the exhibit or its contents in closing argument.  See Commonwealth v. Brown, 462 Mass. 620, 628 (2012) (risk of any unfair prejudice from admission of alleged prejudicial information mitigated by absence of any reference to such information in prosecutor's closing argument).  Furthermore, contrary to the defendant's argument, the evidence of the defendant's guilt -- including the eyewitness testimony of the manager who had worked at the business for twenty-seven years, the defendant's surreptitious and repeated trips to an area that he had no reason to enter,

8

his use of the bag to secrete items, and the observations and photographs depicting the defendant's Facebook Marketplace listings of items for sale, including the manager's label maker and the victim's sports collectible items -- was strong. See Commonwealth v. Despasquale, 86 Mass. App. Ct. 914, 917 (2014) (despite counsel's deficient performance, second prong of ineffective assistance test not met in view of strength of Commonwealth's case). This evidence was further bolstered by the defendant's departure from the shop after being informed by the manager that she had called the police. See Commonwealth v. Booker, 386 Mass. 466, 470 (1982) (evidence of defendant's flight relevant to show consciousness of guilt). In short, the difficulty was not with counsel's effectiveness but rather the robust and corroborated evidence of the defendant's guilt. In these circumstances, we cannot say that the judge abused his discretion in determining that trial counsel's tactical decision did not likely deprive the defendant of an otherwise available, substantial ground of defense or created a substantial risk of a miscarriage of justice. See Millien, 474 Mass. at 429-430.

2. Authentication. The defendant also argues that the judge abused his discretion in admitting in evidence improperly authenticated photographs depicting the stolen items on the defendant's Facebook Marketplace page. We disagree.

9

"'The requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" Commonwealth v. Purdy, 459 Mass. 442, 447 (2011), quoting Mass. G. Evid. § 901(a) (2011). Where the "relevance and admissibility" of a social media post depends on it "being authored by the defendant, the judge [is] required to determine whether the evidence was sufficient for a reasonable jury to find by a preponderance of the evidence that the defendant authored the [post]." Purdy, 459 Mass. at 447. This may be proven by direct or circumstantial evidence, including the post's "'[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics,'" otherwise referred to as "confirming circumstances." Id. at 448-449, quoting Mass. G. Evid. § 901(b)(1), (4) (2011). "[T]he proponent of the evidence must present 'confirming circumstances' beyond simply the fact that" the post originated "from an account in the name of the alleged author." Commonwealth v. Meola, 95 Mass. App. Ct. 303, 314-315 (2019). The standard of review as to a judge's preliminary determination of authentication is deferential. See Id. at 312. Indeed, "there is no requirement that there be direct evidence to support a determination that a digital communication was sent by the defendant." Id. at 310-311, citing Purdy, 459 Mass. at 450.

10

"Rather, a judge making this threshold determination may consider circumstantial evidence and look to '"confirming circumstances" sufficient for a reasonable jury to find by a preponderance of the evidence that the defendant authored the'" Facebook Marketplace listings containing the photographs. Meola, 95 Mass. App. Ct. at 311, quoting Purdy, 459 Mass. at 450.[4]

In the present case, the Commonwealth sought to introduce photographs of the defendant's Facebook Marketplace page taken by the manager.[5]  The judge properly conducted a voir dire of the manager to address the issue of authentication.  See note 4, supra.  Following the voir dire the judge made thorough findings

---

[4] A judge's preliminary determination about whether evidence is admissible "is not conclusive and requires the finder[] of fact to make [its] own independent determination of the same question before [it] may consider the evidence."  Meola, 95 Mass. App. Ct. at 312-313.  Accordingly, even after a proponent of evidence has met the initial burden to support a finding that the proffered evidence is what it is claimed to be, "the opposing party remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the weight of the evidence -- not to its admissibility" (citation omitted).  Id. at 313.

[5] There was conflicting testimony at trial regarding whether the manager took the photographs depicting the listings on the defendant's Facebook Marketplace page, or whether the manager took photographs of those listings from screenshots taken by someone else.  In the present context, this distinction is of no moment.  See Commonwealth v. Davis, 487 Mass. 448, 466 (2021) (discussing authentication of video recording of video recording).

and concluded that there were sufficient corroborating and confirming circumstances to satisfy the authentication requirement.  We discern no abuse of discretion.  The ample and persuasive confirming circumstances -- elicited during voir dire of the manager, during the manager's testimony before the jury, and during the victim's testimony before the jury -- included: that the manager saw the Facebook Marketplace listings posted under the defendant's name and on the defendant's computer, which no one else had access to; that the manager saw her label maker in one of the listings; that the manager saw the victim's items, which she had previously seen in the boxes on the second floor of the business, in the listings; and that the victim identified the items depicted in the photographs of the listings taken by the manager.  Through this testimony, the Commonwealth presented ample evidence sufficient to support a finding that the photographs depicted what the proponent (here the

Commonwealth) claimed them to be. See Meola, 95 Mass. App. Ct. at 313-314. There was no abuse of discretion.

Judgment affirmed.

Order denying motion for new trial affirmed.

By the Court (Blake, C.J., Vuono & Neyman, JJ.[6]),

*Paul Little*

Clerk

Entered: June 2, 2026.

---

[6] The panelists are listed in order of seniority.