MIDDLETON, COMMONWEALTH vs., 100 Mass. App. Ct. 756

 
 COMMONWEALTH vs. MICHAEL W. MIDDLETON.

100 Mass. App. Ct. 756
 December 14, 2021 - March 7, 2022

Court Below: District Court, Ayer Division
Present: Milkey, Blake, & Grant, JJ.

 

Stalking. Abuse Prevention. Protective Order. Electronic Mail. Evidence, Authentication, Expert opinion. Witness, Intimidation, Expert. Intimidation of Witness.

At the trial of criminal complaints charging, inter alia, stalking and multiple violations of a G. L. c. 209A restraining order, a District Court judge did not err in admitting in evidence thirty-three e-mail messages received by the victim, her mother, her partner, and her partner's coworkers, where the circumstantial evidence was overwhelmingly sufficient to permit a reasonable jury to find that the defendant authored the messages; further, neither expert testimony nor proof of the defendant's exclusive access to the computer from which the messages originated was necessary to authenticate the messages as having been sent by him, the judge did not abuse her sound discretion in performing her gatekeeper role, and the judge's instructions about the messages ensured that the jury understood their role in determining whether the defendant sent them. [759-761]

At a criminal trial, a District Court judge did not err in admitting in evidence business records summonsed from Google Inc. showing the subscriber information for several e-mail accounts from which the messages at issue were sent, where expert testimony was not necessary for the jury to understand the records, in that understanding them did not require any scientific, technical, or other specialized knowledge. [761-762]

At the trial of criminal complaints charging multiple violations of a G. L. c. 209A restraining order, no substantial risk of a miscarriage of justice arose from the victim's testimony that the restraining order she had obtained against the defendant had been permanently extended, where the evidence tended to prove that the defendant was the source of e-mail messages that were sent to the victim on the day that the order was made permanent and on the next day, and where the victim's testimony about the order was cumulative of the order itself, which was admitted in evidence and stated twice that it was "Permanent." [762-763]

At a criminal trial, a District Court judge did not err in denying the defendant's motion for a required finding of not guilty as to five counts of witness intimidation, where the evidence was sufficient to prove that by sending e-mail messages that divulged intimate details of the victim's relationship with her partner, as well as the victim's unlisted telephone number, the defendant intended to intimidate or harass the victim and her partner in their 

 Page 757 

role as witnesses, and that the messages alarmed or annoyed the victim and her partner and would cause a reasonable person to suffer substantial emotional distress. [763-764]

COMPLAINTS received and sworn to in the Ayer Division of the District Court Department on July 17, 22, 27 and 30, 2009; September 1 and 10, 2009; and October 7 and 27, 2009. 

 The cases were tried before Sarah W. Ellis, J.

Robert J. Spavento for the defendant.

Melissa W. Johnsen, Assistant District Attorney, for the Commonwealth.

 GRANT, J. This case involves convictions for stalking and other crimes based on a series of anonymously sent e-mail messages (e-mails). As part of its proof that the defendant sent the e-mails, the Commonwealth offered evidence of the subscriber information for the accounts from which the e-mails were sent. We consider whether expert testimony was required to explain the subscriber information, which included the e-mail address associated with each account and the date each account was created and, for some accounts, last used. We conclude that expert testimony was not required.

 Convicted by a District Court jury of one count of stalking in violation of a restraining order, ten counts of violation of a G. L. c. 209A restraining order (209A order), and thirteen counts of witness intimidation, the defendant appeals. [Note 1] He argues that (1) the judge erred in admitting thirty-three e-mails because the Commonwealth did not prove that he sent them; (2) the judge erred in admitting business records summonsed from Google Inc. (Google) showing the subscriber information for eight e-mail accounts, absent expert testimony to explain them; (3) the victim should not have been permitted to testify, without objection, that the 209A order was permanent; and (4) the evidence was insufficient to prove witness intimidation. We affirm.

 Background. The victim and defendant were married for more than a decade. The defendant was, in the victim's words, "very savvy" about technology. He installed all their computers and telephones and set up her accounts. He used to refer to women he deemed unintelligent as "Princess Not So Bright," or "PNSB."

 In August 2008, a judge issued a 209A order directing the defendant, among other things, to have no contact with the victim

 Page 758 

 or her mother. The 209A order originally was issued for a month, then was extended to August 28, 2009. The victim and defendant went through a contentious divorce, which became final in June 2009.

 On July 11, 2009, the victim received an e-mail from an address she did not recognize, "pnsbsex@gmail.com," that was also sent to her current romantic partner, Brad. [Note 2] It referred to Brad's relationship with "Princess not so Bright (aka: PNSB)." A barrage of subsequent e-mails from the same e-mail address sent throughout July 2009 disclosed certain details personal to the victim and Brad, including information that would be known only by a sender who had access to e-mails between them. An e-mail to Brad stated, "Please talk some sense into our Princess. The Pepperell police?? . . . Does PNSB think they care? Besides, what have I done wrong? I did not send this." An e-mail to both the victim and Brad stated,

"You must tell our [PNSB] its not nice to keep calling the police on me. . . . They cannot and are not going to do anything. . . . Why is [PNSB] so convinced I'm going to hurt her?? Is it because her feeble attempt to get me to get rid of my guns by filing the bogus restraining order failed misribly. OMG!!! [PNSB] filed some crap, I'm so scared I will turn my guns in immediately. NOT!!! Does this scare you too???" [Note 3]

 The victim reported the e-mails to police, and on July 20, 2009, Pepperell police Detective William Greathead telephoned the defendant and informed him of the investigation. The defendant admitted he knew of the 209A order, but denied sending the e-mails. After that, the e-mails intensified. On July 22, the victim's mother received an e-mail saying that Brad "was afraid to stay with PNSB when I came to MA for divorce hearing." Also on July 22, Brad received an e-mail that said, "By the way, you realy should tell our Princess to stop wasting the police's time." The victim received an e-mail referring to the coordinates of the location of her cell phone with the words, "Hint: Mapquest." An e-mail to the victim stated:

"You gotta stop with the cops Princess. I told you they don't care. I have not done anything wrong. Inspiring something 

 Page 759 

and doing something are different. Have you told the cops how you lied to get a restraining order??? We both know you did lie. You don't realy think I'm dangerous do you??? . . . Besides if I am so dangerous why have they not come looking for the guns i alledgely have. We both know I don't have any, well not here at least." 

 After Brad canceled his personal e-mail address, the victim received an e-mail mentioning that fact and stating Brad's work contact information, as well as his elderly father's name, address, and telephone number. After the victim changed her telephone number, she received an e-mail stating her new number in the subject line with the message, "Princess, Princess, Princess, their's no point changing your phone number." Detective Greathead received an e-mail from a second Google e-mail address that referred to the restraining order and the divorce and stated, "There's freedom of speech, even in Pepperell. I have the constatutional right to talk to write or say anything I want to. I'm not hurting anyone."

 Between August 7 and 17, 2009, the victim, her mother, Brad, and several of his coworkers received five e-mails from three other Google e-mail addresses, one using the victim's mother's name and another using Brad's name, although neither had set up those accounts. The e-mails disparaged Brad, threatened to disclose confidential information of his employer, and demanded, "Fire [Brad] and I promise to leave [the employer] alone forever."

 On August 28, 2009, the 209A order was made permanent and served on the defendant. Later that same day and the next day, seven e-mails were sent in quick succession to the victim, her mother, Brad, and Detective Greathead; five of those, styled as press releases (press release e-mails), were also sent to dozens of Brad's coworkers and divulged intimate details of the victim's relationship with Brad, as well as the victim's unlisted telephone number.

 Discussion. 1. Authentication of e-mails. The defendant argues that the judge erred in admitting the thirty-three e-mails received by the victim, her mother, Brad, his coworkers, and Detective Greathead. Because the defendant objected to the admission of the e-mails, we review for an abuse of discretion resulting in prejudice to the defendant. See Commonwealth v. Wood, 90 Mass. App. Ct. 271, 275 (2016). Here, the circumstantial evidence that the defendant sent the e-mails was not only sufficient, but overwhelming.

 Page 760 

 "[B]efore admitting an electronic communication in evidence, a judge must determine whether sufficient evidence exists 'for a reasonable jury to find by a preponderance of the evidence that the defendant authored' the communication." Commonwealth v. Oppenheim, 86 Mass. App. Ct. 359, 366 (2014), quoting Commonwealth v. Purdy, 459 Mass. 442, 447 (2011). "Evidence may be authenticated by direct or circumstantial evidence, including its appearance, contents, substance, internal patterns, or other distinctive characteristics" (quotation and citation omitted). Purdy, supra at 447-448. See Mass. G. Evid. § 901(b)(4) (2021). See also Commonwealth v. Welch, 487 Mass. 425, 440-442 (2021) (text messages authenticated by circumstantial evidence, including details of defendant's and victim's lives). Neither expert testimony nor proof of the defendant's exclusive access to the computer from which the e-mails originated was necessary to authenticate the e-mails as having been sent by him. See Purdy, supra at 451 n.7. See also Mass. G. Evid. § 901(b)(11) (2021).

 In ruling the e-mails admissible, the judge carefully applied the applicable case law. She heard voir dire testimony from the victim, Detective Greathead, and Brad as to the details of the e-mails that authenticated them by circumstantial evidence. The judge did not abuse her sound discretion in performing her gatekeeper role and determining that the jury could find that the e-mails were in fact sent by the defendant. See Commonwealth v. Meola, 95 Mass. App. Ct. 303, 307-309 & n.13 (2019). See also Commonwealth v. Gilman, 89 Mass. App. Ct. 752, 759 (2016) ("Facebook chat messages" were "replete with personal references, including pet names"); Oppenheim, 86 Mass. App. Ct. at 368 (instant messages referring to details of prior conversations between defendant and recipient). Contrast Commonwealth v. McMann, 97 Mass. App. Ct. 558, 560 (2020) (Instagram message "Yoooo" devoid of content or tone to show defendant sent it).

 The judge's instructions about the e-mails further ensured that the jury understood their role in determining whether the defendant sent them. See Oppenheim, 86 Mass. App. Ct. at 369. Twice during the victim's testimony, the judge instructed the jurors that unless they found by a preponderance of the evidence that the defendant sent the e-mails, the jurors may not consider them or any testimony about them. The judge repeated that instruction a third time in her final charge. She also made clear that it was the Commonwealth's burden to prove beyond a reasonable doubt that the defendant committed each offense. See Commonwealth v. Alden, 93 Mass. App. Ct. 438, 443-444 (2018), cert. denied, 139 

 Page 761 

S. Ct. 2010 (2019).

 2. Lack of expert testimony about Google records. The defendant argues that the judge erred in admitting business records that were summonsed from Google pursuant to Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979), setting forth the subscriber information for the eight accounts from which the e-mails were sent. At trial, the defendant argued that the Google records contained "some dates and times and codes" that would be "confusing" to the jury without expert testimony. He argues here that absent expert testimony about the Internet protocol (IP) address [Note 4] from which the e-mail accounts were created, the Google "records would not be understood by an ordinary layperson" and so were inadmissible. [Note 5]

 For each account, the Google records listed the e-mail address, the date and time the account was created, and a Google account number; most of the Google records also referred to the date that service ended for that account, or the date it was last used. From those dates, the prosecutor argued in closing that the e-mail accounts were created "in succession" and that each account was created "around the time" when the first e-mail in evidence from that account was sent, and that most of the accounts "stopped being used" after the e-mails in evidence from those accounts were sent.

 We conclude that expert testimony was not necessary for the jurors to understand the Google records setting forth the dates and times each e-mail account was created and, for most of them, last used. Understanding the dates of service for each account did not require any "scientific, technical, or other specialized knowledge." Commonwealth v. Canty, 466 Mass. 535, 541 (2013). See Commonwealth v. Mason, 485 Mass. 520, 538 (2020) (expert testimony not required to explain use of mapping website to plot route from defendant's home to victim's home). See also Commonwealth v. Woollam, 478 Mass. 493, 498-499 (2017), cert. denied, 138 S. Ct. 1579 (2018) (cell phone logs showing dates and times of calls, and that defendant did not call victim after his

 Page 762 

 death, admitted without objection). Contrast Commonwealth v. Gonzalez, 475 Mass. 396, 412 n.37 (2016) (expert testimony necessary to admit opinion, based on cell phone records, as to which cell site transmitted call).

 To the extent that the defendant claims that in order to introduce the Google records the Commonwealth should have been required to present expert testimony about the IP address from which each e-mail account was created, that claim is unavailing. [Note 6] The Google records did not contain any IP addresses. Rather, for each of the eight e-mail accounts, the Google records stated, "No user IP logs data." The defendant did not ask to redact that information. In fact, defense counsel argued in closing that the defendant's name was "not in the Google records," which "have no relation to him at all," and that absent a computer record linking him to the e-mails, the Commonwealth had not met its burden.

 The judge did not err in admitting without expert testimony the Google business records showing the subscriber information for the eight e-mail accounts.

 3. Victim's testimony that restraining order had been extended permanently. The defendant argues that a substantial risk of a miscarriage of justice arose when the victim testified that the 209A order she had obtained against the defendant was extended "permanent[ly]" on August 28, 2009. No such risk arose.

 Evidence that the 209A order was made permanent on August 28, 2009, tended to prove that the defendant was the source of the seven e-mails sent later that day and the next to the victim, her mother, Brad, Brad's coworkers, and Detective Greathead, including two e-mails that referred to a "restraining order." That the defendant persisted in sending e-mails even after the permanent 209A order entered also proved his intent as to crimes that had occurred in July, including stalking in violation of a restraining 

 Page 763 

order. See Commonwealth v. Reddy, 85 Mass. App. Ct. 104, 109 (2014) ("duration of the order" must be established to prove violation of 209A order). Moreover, the victim's testimony about the permanent 209A order was cumulative of the order itself, which was admitted in evidence and stated twice that the 209A order was "Permanent." [Note 7]

 4. Sufficiency of evidence of witness intimidation. The defendant argues that the judge should have allowed his motion, made at the close of the Commonwealth's case-in-chief, for a required finding of not guilty as to five counts of witness intimidation, G. L. c. 268, § 13B, pertaining to the five press release e-mails that were sent to both the victim and Brad on August 28 and 29, 2009.

 As in effect at the time of these crimes, the statute defined the crime of witness intimidation to proscribe conduct including that by which a defendant "directly or indirectly, willfully . . . intimidates or harasses" a witness or potential witness. G. L. c. 268, § 13B (1) (c), as appearing in St. 2006, c. 48, § 3. The statute defined "harass" as "to engage in any act directed at a specific person or persons, which act seriously alarms or annoys such person or persons and would cause a reasonable person to suffer substantial emotional distress." G. L. c. 268, § 13B (3), as appearing in St. 2006, c. 48, § 3.

 The evidence sufficed to prove that by sending the five press release e-mails, the defendant intimidated or harassed the victim and Brad. [Note 8] Those e-mails were sent to the victim, her mother, Brad, dozens of his coworkers, and Detective Greathead; disclosed details of the victim's and Brad's intimate relationship and the victim's unlisted telephone number; and disparaged the victim, Brad, and his employer. As discussed above, the timing of those e-mails shortly after the 209A order was made permanent showed that the defendant intended to intimidate or harass the victim and Brad in their roles as witnesses. Cf. Commonwealth v. Robinson, 444 Mass. 102, 111 (2005) (under prior version of

 Page 764 

 G. L. c. 268, § 13B, defendant's photographing victim's family shortly after show cause hearing was "an act of sufficient hostility" to constitute intimidation).

 In determining whether the five press release e-mails would cause a reasonable person to suffer substantial emotional distress, the jury could consider them in the context of the other e-mails. See Commonwealth v. Carvalho, 88 Mass. App. Ct. 840, 845-846 (2016). e-mails sent in July and earlier in August had disclosed private information about the victim and Brad, threatened to disclose Brad's employer's confidential information, and demanded that the employer "[f]ire" Brad. Two e-mails sent on August 28 and 29, interspersed with the five press release e-mails, were directed to the victim, her mother, Brad, and Detective Greathead, and asked for "someone [to] talk some sense into PNSB," referenced police involvement in the case and the "BULLSHIT restraining order," and warned, "I've got a deal for you . . . go away, crawl back under the rock you are from and maybe I'll leave you alone . . . but again maybe I wont."

 There was evidence that both the victim and Brad were seriously alarmed or annoyed by the five press release e-mails, taken in the context of all the e-mails. The victim testified that receiving all the e-mails made her feel "[h]orrible" and "[a]bsolutely violated," and that she "feared for [her] life." An August 17 e-mail had warned, "The LAST thing she should want is for me to have to come to Massachusetts for ANY reason. Tell PNSB to remember what I once told her would happen . . . the only difference is [Brad] would be adder to the list (the top of the list)." From that, and based on something the defendant had said during their marriage and references to guns in other e-mails, the victim was afraid that the defendant "was going to kill [her] and shoot [her]." Brad testified that the e-mails as a group were "threatening" and made him feel "unsafe," and that those sent in July that mentioned his elderly father's name and address made him "very uncomfortable" and concerned that his father was not safe at home alone. See Carvalho, 88 Mass. App. Ct. at 845-846 (defendant's statements implied he could make victim lose her job and would make her life miserable). See also Commonwealth v. Rivera, 76 Mass. App. Ct. 530, 532-535 (2010).

Judgments affirmed.

FOOTNOTES
[Note 1] Nine convictions for violation of a 209A order were placed on file as subsumed in the conviction of stalking in violation of a restraining order. 

[Note 2] A pseudonym. 

[Note 3] e-mails are quoted as originally spelled. 

[Note 4] An IP address is a unique string of numbers identifying any computer that connects to the Internet. See Commonwealth v. Martinez, 476 Mass. 410, 410-411 (2017). 

[Note 5] At trial, the defendant conceded, as he does here, that the Google records were admissible as business records. See G. L. c. 233, § 78. See also Commonwealth v. Andre, 484 Mass. 403, 411 (2020) (account information for Sony gaming console admitted as business record); Mass. G. Evid. § 803(6)(A) (2021). 

[Note 6] The defendant has not argued, here or in the trial court, that the Google records were not authenticated. As mentioned in note 5, supra, he conceded that they were admissible as business records. If he had raised an objection on authentication grounds, it would have been "futile." Woollam, 478 Mass. at 499. The subscriber information in the Google records pertained to the eight e-mail addresses from which the thirty-three e-mails in evidence were sent. Further, after Detective Greathead telephoned the defendant on July 20 and told him about the investigation, an e-mail was sent to the detective on July 28, from an e-mail account created that same day, mentioning the restraining order and the divorce. See Oppenheim, 86 Mass. App. Ct. at 368 (instant messages authenticated because they referred to details of prior conversations). 

[Note 7] The defendant did not ask that the judge redact the word "Permanent" from the 209A order, or argue in his brief that any such redaction should have been made; we do not suggest that it should have been redacted. The judge did redact the 209A order in accordance with Reddy, 85 Mass. App. Ct. at 108-109. 

[Note 8] As explained in a chart that the judge provided to the jury, one count of witness intimidation pertained to conduct targeting the victim on August 28, three counts pertained to conduct targeting her on August 29, and three counts pertained to conduct targeting Brad on August 29. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.