NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1156

COMMONWEALTH

vs.

DWAYNE A. MILLER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from an order of a judge of the District Court revoking his probation.  He claims that certain evidence admitted by the judge was not authenticated and thus inadmissible at his probation revocation hearing.  The defendant also contends that the judge relied on hearsay evidence that lacked indicia of reliability and was insufficient to prove a violation of probation.  We affirm.

Background.  On July 30, 2021, the defendant pleaded guilty to harassment, stalking, and violation of an abuse prevention order, and was sentenced to concurrent terms of eighteen months in the house of correction, suspended for a period of eighteen months with supervised probation.  His probation required that

he not commit any new offenses.  While he was on probation, the defendant was charged in Rhode Island with unauthorized dissemination of indecent material, based on allegations that he posted sexually explicit video recordings of his ex-girlfriend (victim)[1] on the Internet without her permission.  See R.I. Gen. Laws § 11-64-3 (2018).  The defendant received proper notice of the alleged violation and a final surrender hearing was scheduled.

At the hearing, the victim testified that she was in a relationship with the defendant for approximately one year, beginning in November 2021.  During their relationship, the defendant used his cell phone to make, with the victim's consent, a video recording of the defendant and the victim engaging in consensual sexual acts.  The victim never gave the defendant permission to distribute that recording.  On November 6, 2022, the victim ended her relationship with the defendant.  On November 12, 2022, the defendant sent three e-mails to the victim, at 7:58 P.M., 8:01 P.M., and 9:45 P.M., expressing his anger toward her and stating he intended to "blast [the video] all over Rhode Island" and "post" it on the Internet.  A video recording of the victim performing oral sex on the defendant was attached to the first e-mail.  A still image depicting the

---

[1] This was a different victim from the one in the offenses for which the defendant was on probation.

victim holding the defendant's penis in her hand was attached to the second e-mail.  In between the second and third e-mails, at 9:07 P.M., the victim received an Instagram direct message (DM) from a person she did not know stating, "I must say your tape is really nice I seen a clip on Twitter.  Would you be interested in doing more?"  On November 23, 2022, the victim received text messages from a number she did not recognize offering her money to "star in a role of an upcoming [adult] film."  Finally, on November 25, 2022, the victim saw an unauthorized Facebook page with her full name, personal information, and explicit photographs of her to which only she and the defendant had access.

The judge admitted print copies of the e-mails, an Instagram DM, text messages, and Facebook page into evidence.  The judge also considered as evidence:  (1) a November 25, 2022 affidavit and arrest warrant for the defendant from the East Providence, Rhode Island, Police Department; (2) an East Providence Police Department incident report that included the victim's account of the events; (3) a Rhode Island domestic abuse protection order obtained by the victim against the defendant with an accompanying affidavit from the victim, dated December 6, 2022; (4) the defendant's Rhode Island criminal history record information; (5) a Rhode Island District Court criminal complaint charging the defendant with unauthorized

dissemination of indecent material; and (6) e-mails between the defendant, the defendant's attorney, and the defendant's Massachusetts probation officer.

The defendant testified that he did not post or share any sex video recordings of the victim on the Internet, and that he had no access to the video recordings because he had sent them to the victim soon after they were made without keeping a copy. He also denied publishing the photograph of the victim holding his penis and stated that he neither took the photograph nor had access to it. The defendant further denied creating a Facebook profile in the victim's name.

Discussion. 1. Authentication. The defendant asserts on appeal that the e-mails, Instagram DM, text messages, and Facebook page should not have been admitted into evidence because they were not properly authenticated. We disagree.

Authentication requires the judge to determine, by a preponderance of the evidence, "that the item in question is what the proponent claims it to be" (quotation and citation omitted). Commonwealth v. Connolly, 91 Mass. App. Ct. 580, 586 (2017). "A judge making a determination concerning the authenticity of a communication . . . may look to confirming circumstances . . . to conclude that this evidence is what its proponent claims it to be" (quotation omitted). Commonwealth v. Purdy, 459 Mass. 442, 448-449 (2011). Neither expert testimony

4

nor exclusive access to an e-mail account is necessary to authenticate authorship of an e-mail. Id. at 451 n.7.

Here, there was ample basis for the judge to conclude that the e-mails were authentic. First, the victim testified that the e-mails came from the same e-mail address that the defendant used to communicate with her throughout their relationship, and the judge credited her testimony. See Commonwealth v. Casanova, 65 Mass. App. Ct. 750, 756 (2006) (findings based on credibility assessments unique province of judge). The victim's testimony was corroborated by the defendant's communications with his probation officer using the same e-mail address, which contained the defendant's first name. See Purdy, 459 Mass. at 450-451 & n.7. The contents of the e-mails provided further confirming circumstances because they discussed the creation of the sex video recording, information to which only the victim and the defendant would be privy. See id. See also Commonwealth v. Lopez, 485 Mass. 471, 477-478 (2020). Furthermore, the video recording, to which both the victim and the defendant testified that the other had exclusive access, was attached to the first e-mail.

Similarly, the Instagram DM and text messages were sufficiently authenticated based on their content and context. The DM was sent around one hour after the e-mail that stated the defendant would "blast [the video] all over Rhode Island." It

5

referred to the sender seeing the victim's "tape" on "Twitter" and offered her $10,000 for a video.  The text messages, which the victim received about ten days later, indicated that the sender was an "adult film maker" and offered the victim $50,000 to "star in a role of an upcoming film."  The DM and text messages' references to the victim's sex tape and the timing of the messages supported the judge's determination that they were communications from people who had seen the video recording.  Neither the identity of the senders nor the location on the Internet where the video recording was viewed was needed for authentication.  See Commonwealth v. Middleton, 100 Mass. App. Ct. 756, 759-760 (2022); Commonwealth v. Gonsalves, 99 Mass. App. Ct. 638, 642 (2021); Commonwealth v. Meola, 95 Mass. App. Ct. 303, 313-314 (2019).

Finally, the judge properly determined that the Facebook document was also sufficiently authenticated.  The victim testified that a childhood friend had seen the Facebook page and contacted her.  When the victim saw the page, she recognized the profile picture as a still photograph of her taken by the defendant during a Facetime video call.  The victim also testified that only she and the defendant had access to the photographs posted on that Facebook page, one of her holding the defendant's penis taken from the sex video recording and another of her partially clothed.  Although the defendant did not object

6

to its admission or dispute during his testimony that it was a Facebook profile, he denied creating the account. The judge implicitly discredited his testimony and instead credited the victim's testimony that she did not create the profile herself. See Casanova, 65 Mass. App. Ct. at 756. The victim's testimony and the profile's appearance were sufficient to confirm that the proffered evidence was a Facebook page with the victim's personal information and images of her.

Because we conclude that the e-mails, Instagram DM, text messages and Facebook page were properly authenticated, their admission was not error and thus created no risk of prejudice nor a substantial risk of a miscarriage of justice.[2]

2. Hearsay. The defendant next argues that the judge violated his due process rights by improperly relying on unreliable hearsay contained in the e-mails, Instagram DM, text messages, and Facebook page discussed above, as well as in the police reports admitted by the judge as evidence. He contends that without these hearsay statements there was an inadequate basis for the judge to find that he violated his probation. We

---

[2] The defendant objected to the admission of the first e-mail, thus we review its admission for prejudicial error. See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005). Where the defendant did not object to any of the other documents, we review for error and a substantial risk of a miscarriage of justice. See Commonwealth v. Williams, 102 Mass. App. Ct. 626, 630 (2023).

agree with the judge that the hearsay evidence was substantially reliable and conclude that the sum of the evidence amply supported her finding that the defendant violated his probation.

"In probation revocation proceedings, the Commonwealth bears the burden of proving, by a preponderance of the evidence, that the probationer violated the terms and conditions of [his] probation." Commonwealth v. Bruno-O'Leary, 94 Mass. App. Ct. 44, 47 (2018). At a probation violation hearing, a judge may rely on hearsay evidence that has "substantial indicia of reliability." Commonwealth v. Ogarro, 95 Mass. App. Ct. 662, 668 (2019). In assessing whether hearsay is substantially reliable, the judge may consider:

> "(1) whether the evidence is based on personal knowledge or direct observation; (2) whether the evidence, if based on direct observation, was recorded close in time to the events in question; (3) the level of factual detail; (4) whether the statements are internally consistent; (5) whether the evidence is corroborated by information from other sources; (6) whether the declarant was disinterested when the statements were made; and (7) whether the statements were made under circumstances that support their veracity."

Id., quoting Commonwealth v. Hartfield, 474 Mass. 474, 484 (2016). See Commonwealth v. Costa, 490 Mass. 118, 124-125 (2022). "There is no requirement that hearsay satisfy all the above criteria to be trustworthy and reliable." Commonwealth v. Patton, 458 Mass. 119, 133 (2010). We review the judge's assessment of the reliability of that evidence for an abuse of discretion. See Commonwealth v. Jarrett, 491 Mass. 437, 445

8

(2023), citing L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Here, in addition to her oral findings, the judge made written findings that the hearsay was substantially reliable because it was (1) based on personal knowledge or direct observation, (2) involved observations recorded close in time to the events, (3) provided under circumstances that support the source's veracity, (4) factually detailed, and (5) internally consistent. See Commonwealth v. Grant G., 96 Mass. App. Ct. 721, 725 (2019) (judge relying on hearsay evidence in probation violation hearing should detail evidence's reliability). The judge also noted that "[the victim]'s testimony corroborated many of the hearsay items admitted during the hearing." We agree.

a. E-mails and attachments. The judge found that the defendant sent the e-mails. Therefore, assertions contained within the e-mails that the video recording of the victim would be circulated "all over Rhode Island" were nonhearsay statements of an opposing party. See Mass. G. Evid. § 801(d)(2)(A) (2022). See also Commonwealth v. Kozubal, 488 Mass. 575, 585-588 (2021) (text messages from defendant to victim were statements of party opponent). To the extent that the icon and "video.MOV" identified the attachment on the first e-mail as a video recording, it was reliable hearsay because the victim testified

9

that the e-mail "had a video attached to it" and that she saw it "when [the defendant] shared it with [her] on November 12th via email." The still image attached to the second e-mail was not a statement, and therefore did not constitute hearsay. See Commonwealth v. Ubeda, 99 Mass. App. Ct. 587, 595 (2021).

b. Instagram DM and text messages. The Instagram DM and text messages referred to the sexual content of the video recording and offered the victim money to participate in similar "project[s]." According to the messages, the sender of the DM had "seen a clip [of the video] on Twitter," while the texter "recently purchased ownership to [the victim's] project." As mentioned above, the Instagram DM was sent about an hour after the defendant's e-mail stating he would "blast [the video] all over Rhode Island," and the text messages were sent about ten days thereafter. The hearsay statement implicit in these messages -- that the video recording was disseminated on social media -- was substantially reliable because it was based on the senders' personal observations recorded close in time to the defendant's threats to the victim. See Hartfield, 474 Mass. at 484. Moreover, the victim's testimony that she was able to determine that the named texter actually existed supported the veracity of the statement. See id.

c. Facebook page. The defendant's argument that the Facebook "printouts" were unreliable hearsay misses the mark.

10

The only information on the Facebook page conceivably offered for its truth was the date "Nov 12" appearing on the second page of the posting. Although this information was not part of the articulated basis for concluding that the defendant created the profile,[3] the judge could have found it substantially reliable given the victim's testimony that she received the defendant's e-mails threatening to share the video recording on November 12, 2022, and that she first saw the profile on November 25, 2022. To the extent the defendant asserts that the origin of the account was "unknown," "fake" profiles can be created, or there was "no evidence stating when the page was created or by whom," he mistakenly conflates hearsay with authentication.

d. _Police reports_. Finally, the defendant contends that the victim's statements documented in the incident and supplemental Rhode Island police reports were unreliable hearsay. We agree with the judge that they were substantially reliable. The victim's initial report to police was within a few hours of receiving the defendant's e-mails, she provided more information within an hour of receiving the first text message offering her a role in an adult film, and she

---

[3] The judge stated, "[b]ecause I find that [the defendant] made this video, did not have permission of [the victim] to share it, but did share it and posted it, as he told her he would, I also find it credible that he created this profile, including the profile pictures."

11

supplemented her statement within twelve hours after she learned about the Facebook profile.  See Commonwealth v. Nunez, 446 Mass. 54, 59 (2006) (statements made to officer soon after events when incident still fresh in victim's mind substantially reliable).  In each instance, the victim described events based on her personal knowledge and police had the opportunity to directly observe her in person.  The victim's statements were detailed, and she provided supporting documents to police.  The documents included the sex video recording, in which police were able to "positively identify [the victim] as the female in the video, who is performing oral sex on a male."  We thus conclude that the judge did not abuse her discretion by finding the hearsay statements in the police reports substantially reliable.

Order revoking probation and imposing sentence affirmed.

By the Court (Desmond, Brennan & Smyth, JJ.[4]),

Clerk

Entered:  October 1, 2024.

---

[4] The panelists are listed in order of seniority.