NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-704

COMMONWEALTH

vs.

JOHN ECKER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, John Ecker, appeals from an order of a Superior Court judge revoking his probation.  The defendant argues that at his probation revocation hearing, the judge admitted e-mail messages that were not properly authenticated, and the evidence was insufficient to support a finding that he violated his probation.  We affirm.

Background.  In July 2014, a jury convicted the defendant of two counts of criminal harassment, of two different female victims, in violation of G. L. c. 265, § 43A (a), as then in effect[1]; stalking, in violation of G. L. c. 265, § 43 (a), as

_____

    [1] The statute was amended in 2024.  All references to § 43A are to the version effective May 3, 2010.

then in effect[2]; seven counts of violating a harassment prevention order, in violation of G. L. c. 258E, § 9; intimidating a witness, in violation of G. L. c. 268, § 13B, as then in effect[3]; and attempt to commit a crime (violation of a harassment prevention order), in violation of G. L. c. 274, § 6. In addition to terms of incarceration on other convictions, the defendant was sentenced on the stalking conviction to fifteen years' probation, beginning on September 2, 2014, on conditions including that he not commit any new offenses. On appeal, this court affirmed the convictions.[4] Commonwealth v. Ecker, 92 Mass. App. Ct. 216, 223 (2017).

On September 22, 2023, a complaint issued in the District Court alleging that the defendant had engaged in criminal harassment and witness intimidation of a third woman, Sophia.[5] After notice to the defendant, on October 27, 2023, a probation revocation hearing was held in the Superior Court, at which the defendant's probation officer and Sophia testified as follows.

---

[2] The statute was amended in 2014.

[3] The statute was amended in 2018.

[4] On appeal, the defendant did not challenge his convictions of intimidation of a witness and seven counts of violating a harassment prevention order. See Ecker, 92 Mass. App. Ct. at 217 n.1.

[5] A pseudonym.

2

In July 2022, the defendant applied in person for Supplemental Nutrition Assistance Program (SNAP) benefits from the Department of Transitional Assistance.  Sophia, who was a SNAP case worker, assisted him.  The next day, the defendant telephoned Sophia's workplace and left her a voicemail message that "concerned" her.

About one year later, the defendant sent two handwritten letters to Sophia at her workplace.  Sophia applied for a harassment prevention order, which was not issued.  Shortly thereafter, on September 1, 2023, Sophia testified by videoconference at a probation revocation hearing at which it was alleged that the defendant's conduct described in the application for the harassment prevention order constituted a probation violation.  The judge did not find the defendant in violation of probation.

Between September 12 and September 18, 2023, Sophia received six e-mail messages from "eckerjohn7@outlook.com," which was the e-mail address the defendant used to communicate with his probation officer.  Most of these e-mail messages contained the typewritten signature "John Ecker."  The content of the e-mail messages included purportedly romantic overtures toward Sophia, such as, "Will you marry me?"  The e-mail messages made Sophia feel "[a]ppalled, concerned, scared, [and] confused."  Attached to one of the e-mail messages was a

3

document captioned as the will of testator "John Leonard Ecker, Jr.," which named Sophia as the testator's wife. Another e-mail message read, "I am sending you links to join my YouTube Family Premium, Microsoft 365 Family subscription, and links to some videos I created at my studio on YouTube," and contained a link to a YouTube video recording depicting the defendant. A few minutes after receiving that e-mail message, Sophia received two e-mail messages from those digital platforms, one originating from a subscriber named "John" and the other from "John Ecker," inviting her to join his family subscriptions. Yet another e-mail message stated, "[D]o we need to send a search and rescue team into [Sophia's home address]?" Sophia had never given the defendant her home address.

Sophia never replied to any of the e-mail messages; she turned them over to the police. A District Court judge issued a harassment prevention order and ordered the defendant to stay away from and not contact Sophia.

At the probation revocation hearing in the Superior Court, the defendant objected, on grounds including authentication, to the admission of copies of the e-mail messages. Overruling those objections, the judge found that the e-mail messages sent to Sophia and an e-mail message sent to the defendant's probation officer were "substantially reliable" as well as "consistent internally, and . . . consistent with each other."

4

The judge concluded that the defendant had violated his probation by engaging in criminal harassment of Sophia, in violation of G. L. c. 265, § 43A; the judge did not find a violation based on witness intimidation. The defendant moved to reconsider the finding of probation violation, arguing that the contents of the e-mail messages were speech protected by the First Amendment to the United States Constitution. The judge denied that motion. The judge revoked the defendant's probation and imposed a sentence. The defendant appeals.[6]

Discussion. "At a probation violation hearing, the Commonwealth bears the burden of proving a violation of a condition of probation by a preponderance of the evidence" (citation omitted). Commonwealth v. Jarrett, 491 Mass. 437, 445 (2023). The judge's decision to revoke probation and underlying evidentiary decisions are reviewed for an abuse of discretion. See Commonwealth v. Rainey, 491 Mass. 632, 648 (2023); Jarrett, supra.

1. Authentication. The defendant argues that the judge abused his discretion in admitting the e-mail messages in evidence because they were not properly authenticated. We are not persuaded.

---

[6] The judge also denied in part the defendant's motion for credit for time served. The defendant does not make a separate argument as to that denial on appeal.

"Where evidence is not authentic, it is irrelevant, and thus, it cannot be a reliable basis for revoking probation." Commonwealth v. Sargent, 98 Mass. App. Ct. 27, 30 (2020). "In the case of a digital communication that is relevant only if authored by the defendant, a judge is required to determine whether there is sufficient evidence to persuade a reasonable trier of fact that it is more likely than not that the defendant was the author." Commonwealth v. Meola, 95 Mass. App. Ct. 303, 308 (2019). Formal procedures for authenticating evidence are not required in the probation revocation context because these proceedings "must be flexible in nature" and "all reliable evidence should be considered." Sargent, supra, quoting Commonwealth v. Durling, 407 Mass. 108, 114 (1990).

Here, there was ample basis for the judge to conclude that the e-mail messages were authored or sent by the defendant. First, the e-mail messages bore the defendant's name as the sender. Although "[e]vidence that the defendant's name is written as the author of an e-mail . . . is not sufficient alone to authenticate the electronic communication as having been authored or sent by the defendant," such evidence may be a confirming circumstance. Commonwealth v. Purdy, 459 Mass. 442, 450 (2011). Second, the e-mail address from which the e-mail messages to Sophia originated was the same one that the defendant used to communicate with his probation officer.

6

Third, the e-mail messages were authenticated by evidence that one of them contained a link to a YouTube video recording depicting the defendant.  See Purdy, 459 Mass. at 451 (e-mail message authenticated by evidence including attached photograph of defendant); Meola, 95 Mass. App. Ct. at 314 (Facebook message authenticated by evidence including attached videotape depicting defendant).  Finally, the e-mail messages were sent to Sophia about two weeks after she testified against the defendant at the September 2023 probation revocation hearing, and thus the timing of the e-mail messages was also a confirming circumstance.  See Commonwealth v. Welch, 487 Mass. 425, 441-443 (2021) (text messages authenticated where contents contained private details of defendant's and victim's lives, including defendant recently being fired and arrested).  Cf. Commonwealth v. Middleton, 100 Mass. App. Ct. 756, 763-764 (2022) (timing of e-mail messages sent shortly after G. L. c.  209A order made permanent supported inference that defendant intended to intimidate or harass witnesses).

Because the judge had ample basis to conclude that the e-mail messages were authenticated as originating from the defendant, the statements within them were "presumptively reliable" as nonhearsay statements of an opposing party, and therefore admissible at the probation revocation hearing.

7

Durling, 407 Mass. at 118. See Mass. G. Evid. § 801(d)(2)(A) (2025).

2. Sufficiency of the evidence. The defendant argues that the evidence was insufficient to support the finding that he criminally harassed Sophia. He contends that the Commonwealth did not prove the defendant committed at least three separate acts that "seriously alarm[ed]" Sophia and "would cause a reasonable person to suffer substantial emotional distress." G. L. c. 265, § 43A. See Commonwealth v. Johnson, 470 Mass. 300, 307 (2014). The argument is unavailing.

The judge heard evidence that in September 2023 the defendant sent six e-mail messages to Sophia and instigated the two contacts to her from digital platforms; those were in addition to his July 2022 voicemail message and two letters in the summer of 2023. That evidence sufficed to prove "a knowing pattern of conduct or series of acts" for criminal harassment. G. L. c. 265, § 43A. The judge credited Sophia's testimony that the e-mail messages made her feel "threatened," "afraid that [the defendant] might hurt [her]," "very scared[,] anxious," and "very concerned for [her] safety," and that the defendant's persistent, unwanted romantic overtures made her feel "[a]ppalled, concerned, scared, [and] confused." See Commonwealth v. O'Neil, 67 Mass. App. Ct. 284, 285-286, 294 (2006) (defendant's multiple telephone calls and letters

8

containing "obsessive tone and fabricated familiarity with the victim" reasonably caused alarm and severe emotional distress to victim, who had no relationship with defendant beyond having attended same high school). Cf. A.S.R. v. A.K.A., 92 Mass. App. Ct. 270, 271, 276-277, 280 (2017) (tone and persistence of numerous e-mail messages, text messages, and voice messages to former romantic partner "reasonably can be described as criminal harassment").

The judge's finding that the defendant violated his probation was supported. See Jarrett, 491 Mass. at 445. Cf. Middleton, 100 Mass. App. Ct. at 763-764 (testimony supported witness intimidation conviction where witnesses were "seriously alarmed or annoyed" by five e-mail messages).

3. First Amendment. In the Superior Court, the defendant in his motion to reconsider argued unsuccessfully that his statements in the e-mail messages were speech protected by the First Amendment because they did not contain "threats." In his brief on appeal, the defendant does not raise that argument, even though he filed his brief after the United States Supreme Court considered a similar issue in Counterman v. Colorado, 600 U.S. 66, 75 (2023).[7] In his reply brief, the defendant attempts

_____

[7] The defendant's motion to reconsider did not cite Counterman, 600 U.S. at 75, which had been decided more than four months before.

9

to raise his First Amendment argument, relying on Counterman, id. at 69, 75, and Commonwealth v. Cruz, 495 Mass. 110, 113-114 (2024) (issued after defendant filed his primary brief).  This argument is waived.  See Mass. R. A. P. 16 (c), as appearing in 481 Mass. 1628 (2019) ("No new issues shall be raised in the reply brief"); Commonwealth v. Hampton, 64 Mass. App. Ct. 27, 33 n.8 (2005) ("arguments raised for the first time in a reply brief are waived").  If we did consider it, we would conclude that based on the evidence that Sophia had previously sought a harassment prevention order and testified at the prior probation revocation hearing, the judge could find by a preponderance of the evidence that when the defendant sent the e-mail messages to Sophia, he "was aware that [she] could regard his statement[s]

as threatening violence and delivered [them] anyway." <u>Cruz</u>, <u>supra</u> at 114.

<u>Orders finding probation violation, revoking probation, and imposing sentence affirmed</u>.

<u>Order denying motion for reconsideration of finding of probation violation affirmed</u>.

By the Court (Hand, Grant & Wood, JJ.[8]),

Clerk

Entered:  June 26, 2025.

---

[8] The panelists are listed in order of seniority.